UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at COVINGTON**

| | | |
|---|---|---|
| RICHARD DEAN BOYD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 2:17-cv-107-JMH |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION AND ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*\*

Plaintiff Richard Dean Boyd (Plaintiff) seeks judicial review of the Commissioner's final decision denying his claim for both Disability Insurance Benefits (DIB) and supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act (Tr. 174-78). See 42 U.S.C. §§ 401-33, 1381-1383c. The matter is before the Court on cross-motions for summary judgment (DEs 9 and 11).

On November 14, 2013, Plaintiff filed his claims for DIB and SSI (Tr. 174-78). He pursued these claims to a *de novo* hearing before an ALJ in May 2016 at which Plaintiff—with the assistance of his attorney—and a vocational expert testified (Tr. 31-85). On May 31, 2016, the ALJ issued an unfavorable decision (Tr. 10-30). Plaintiff requested Appeals Council review of the ALJ's decision (Tr. 9, 328-32). The Appeals Council denied the request (Tr. 1-

5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. § 422.210(a).

Plaintiff was 47 years old on the date of the ALJ's decision (Tr. 34, 174). He has a high school equivalent education (Tr. 39, 235) and past work experience as a customs and border patrol agent, mechanic, and tow truck driver (Tr. 72-73, 179-215, 235, 247-55, 327). He alleged disability since November 14, 2013 (Tr. 174) ostensibly due to high blood pressure, diabetes, low back strain, migraine headaches, a left shoulder impairment, high cholesterol, thyroid problems, posttraumatic stress disorder (PTSD), anxiety, and depression (Tr. 234, 276).

**MEDICAL EVIDENCE**

The medical evidence showed that Plaintiff, who served in the Army during the Gulf War, underwent most of his treatment at Veterans Administration facilities. Prior to his alleged onset date, in March 2013, he underwent a "Fitness for Duty Evaluation" at the behest of Customs and Border Protection (Tr. 644). He had applied for disability retirement based on pain in his shoulder, knee, and back, high blood pressure, and PTSD (Tr. 644). Lynn Soffer, M.D., said that, "[b]ased on the information provided with respect to back pain, shoulder pain, and knee pain requiring narcotic medication and causing inability to perform many essential job duties, I recommend that [Plaintiff] is not fit for

2

duty for the position of Customs and Border Protection Officer" (Tr. 645) (emphasis in original). In June 2013, the Department of Veterans Affairs issued a decision in which it found that Plaintiff had a 100 percent service-connected disability (Tr. 217-24). The following November, the Office of Personnel Management informed Plaintiff that it approved his application for disability retirement from his position as a Customs and Border Protection Officer due to anxiety (Tr. 226-29).

In January 2014, after his alleged onset date, Plaintiff underwent an MRI study of his low back (Tr. 381), which showed a decrease in a previously identified disc protrusion, but otherwise no significant changes since May 2009 (Tr. 383). In February 2014, Geoff Schwerzler, Psy.D., examined Plaintiff at the request of the state agency (Tr. 373-78). Dr. Schwerzler diagnosed PTSD and said Plaintiff's prognosis was likely "guarded" at that time and his mental health conditions were quite serious, however they appeared to be treated consistently and over time, he might improve somewhat (Tr. 377). He said Plaintiff

> has no significant difficulty understanding and remembering simple one or two step instructions. He has noticeable problems with concentration and his task completion is likely below average at this time. He has no major problems with his memory. His ability to interact with peers, coworkers or supervisors is likely seriously impaired at this time. His ability to adapt and respond to stress is likely moderately impaired as well. [Plaintiff] is able to read and write adequately at this time. His problem solving and judgment are

3

adequate at this time and he does have some problems
completing activities of daily living on his own.

(Tr. 377-78).

In March 2014, Donna Sadler, M.D., a state agency physician, reviewed the evidence and assessed limitations consistent with a range of light work that did not require climbing of ladders, ropes, or scaffolds; more than four hours of standing and/or walking and about six hours of sitting each in an eight-hour workday; or more than occasional pushing or pulling with his left arm, climbing of ramps and stairs, balancing, stooping (i.e., bending at the waist), kneeling, crouching, crawling, reaching, and handling (Tr. 102-16). The following month, Jacob Forrester, M.D., a psychiatrist affiliated with the Veterans Administration, said Plaintiff had PTSD and persistent depressive disorder with anxious distress, late onset and intermittent depressive episodes (current episode severe) (Tr. 649). He said he was "separate from the disability process, and in fact ha[d] never been an evaluator for the process" (Tr. 649). Therefore, he was "unaware [of the] standard practice of the evaluations, and c[ould] only offer statements such as this to clarify [his] Clinic's evaluation and treatment process" (Tr. 649).

In July 2015, Matthew DesJardins, M.D., a physician with the Veterans Administration, said Plaintiff had limited range of motion in his left shoulder as the residual effect of a prior open

4

reduction and internal fixation (ORIF) and subsequent surgeries for clavicle fracture (Tr. 653). He diagnosed Plaintiff with chronic left shoulder pain (Tr. 654). He noted that Plaintiff sustained a left clavicle fracture while in the military in 1994, and, after nonunion of the fracture, underwent ORIF and developed an infection, which necessitated removal of the plate and debridement of the clavicle and rotator cuff (Tr. 654). He said Plaintiff had pain with range of motion and weight bearing in the left shoulder (Tr. 656). He said Plaintiff had muscle atrophy to the deltoid and biceps (Tr. 658). He said Plaintiff's left shoulder condition affected his ability to lift greater than five pounds occasionally, perform above the shoulder activities, and do any repetitive activities with the left upper extremity (Tr. 661).

In January 2016, Michael Fletcher, M.D., a physician with Interventional Pain Specialists, said Plaintiff's prognosis was fair (Tr. 789). He said Plaintiff's pain would interfere with attention and concentration frequently (Tr. 790). He said he had a "marked" limitation on his ability to deal with work stress (Tr. 790). He said Plaintiff could sit for two hours and stand for 20 minutes each at one time (Tr. 790). He said Plaintiff could sit for about two hours and stand/walk for less than two hours each in an eight-hour day (Tr. 790). He also said he had to walk every 30 minutes for five minutes, could only occasionally lift less than 10 pounds, was limited in his ability to reach, could not bend and

5

twist at the waist at all, and would be absent from work more than three times per month (Tr. 792).

Later that month, Plaintiff underwent surgical implantation of a trial spinal cord stimulator (Tr. 867-70). In February 2016, Plaintiff underwent a mid-back MRI study (Tr. 894), which showed multilevel degenerative changes with moderate disc protrusions and subtle anterior kinking of the cord with questionable areas of increased signal and differential considerations including arachnoid synechia secondary to degenerative disc changes and less likely cord herniation or arachnoid cyst (Tr. 894-95). The following month, Plaintiff underwent thoracic laminectomy surgery and placement of a Medtronic permanent epidural paddle lead and subcutaneous pulse generator for spinal cord stimulation (Tr. 900-01).

## ALJ'S DECISION

The ALJ ultimately determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except

> he is limited to occasional pushing and pulling with the non-dominant upper extremity; Limited to occasional climbing of ramps, stairs and ladders; Limited to no climbing of ropes and scaffolds; Limited to occasional stooping, kneeling, crouching and crawling; Limited to occasional overhead reaching with the non-dominant upper extremity; Limited to frequent reaching in front and/or laterally with the non-dominant upper extremity; Because of all the claimant's mental impairment and symptoms

6

combined, the claimant may, during times of symptoms exacerbation have moderate limitation in (1) concentration, persistence and/or pace when attempting certain more detailed tasks, so the claimant is limited to solving practical problems and dealing with a variety of concrete variables and situations in formatted and or standardized situations, is able to interpret a variety of instructions in written, oral and/or diagrammatic form, and (2) social functioning, so the claimant is limited to jobs that do not require more than occasional work-related interaction with the public.

(Tr. 17-23). Proceeding to step five, based on vocational expert testimony, the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy, including the jobs of cleaner, assembler, and inspector (Tr. 23-24). The ALJ, therefore, determined that Plaintiff was not disabled (Tr. 24-25).

## STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to an inquiry into whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. See 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred because he did not reasonably evaluate the medical source opinions in determining his residual functional capacity (Pl.'s Motion for Summary Judgment (Pl.'s Br.) at 10-12).

Plaintiff argues that the ALJ erred because he did not reasonably evaluate the medical source opinions in determining his residual functional capacity (Pl.'s Motion for Summary Judgment (Pl.'s Br.) at 10-12).  Before addressing this argument, the Court must consider the ALJ's duties in this regard.

In determining a claimant's residual functional capacity, an ALJ must decide what weight, if any, to give to the medical opinions of record. "Medical opinions" are

> [S]tatements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can still do despite [your] impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527(a)(2). Some "medical opinions" are entitled to "controlling weight." *See id*. § 404.1527(c)(2). To be eligible for controlling weight, an opinion must be a medical opinion and must also (1) come from a treating source, i.e., an acceptable medical source "who provides you, or has provided you with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you," *id*. § 404.1502; (2) be "well-supported by medically acceptable clinical and laboratory

8

diagnostic techniques"; and (3) be "not inconsistent" with the other substantial evidence in the case record. *Id.* § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *2. If no opinion is entitled to controlling weight, the agency considers several factors in deciding how much weight to give to an opinion, including the nature of the medical source's relationship with the claimant, supportability, consistency, specialization, and any other factors that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c)(1)-(6). Generally, an ALJ should give the opinions of a treating physician controlling weight but may discount an opinion if he provides good reasons supported by substantial evidence*. See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Plaintiff argues that the ALJ erred because he did not reasonably evaluate the April 2015 letter of Dr. Forrester, a treating psychiatrist (Pl.'s Br. at 10-11). As an initial matter, Dr. Forrester's April 2015 letter, wherein he said Plaintiff had PTSD and persistent depressive disorder with anxious distress, late onset, with intermittent depressive episodes (current episode severe) (Tr. 649), was consistent with the ALJ's finding that Plaintiff had "severe" PTSD, anxiety, and depression (Tr. 15). And, as the ALJ found, Dr. Forrester assigned "no actual opinions of mental limitations" in his April 2015 letter (Tr. 21). The ALJ, therefore, reasonably evaluated Dr. Forrester's April 2015 letter

9

in determining Plaintiff's residual functional capacity. 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

Plaintiff next argues that the ALJ erred because he did not reasonably evaluate the January 2016 opinion of Dr. Fletcher, a treating physician, in determining his residual functional capacity (Pl.'s Br. at 11-12). As the ALJ found (Tr. 21), however, Plaintiff testified at the administrative hearing that Dr. Fletcher did not perform any physical function testing (Tr. 47). Nor did he send Plaintiff out for any kind of physical function testing (Tr. 47). *See* 20 C.F.R. § 404.1527(c)(3); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997) (An ALJ may discount a doctor's opinion when the doctor's findings are not supported by objective medical evidence or are inconsistent with the record as a whole).

In evaluating Dr. Fletcher's report, the ALJ noted (Tr. 21), Dr. Fletcher did not connect the physical limitations that he assigned with any objective medical evidence (Tr. 789-92). *See* 20 C.F.R. § 404.1527(c)(3); *Walters*, 127 F.3d at 529-30. As the ALJ also noted, Dr. Fletcher's opinion was internally inconsistent

(Tr. 21). For example, Dr. Fletcher said Plaintiff could sit for two hours at one time, but then said he would only be able to sit for a total of about two hours in an eight-hour day (Tr. 790). He then said Plaintiff had to get up from a seated position every 30 minutes and walk around for five minutes (Tr. 791). Dr. Fletcher also said Plaintiff was unable to bend at the waist (Tr. 792). Sitting, however, requires 90 degree bending at the waist. Not only did Dr. Fletcher say that Plaintiff could sit (Tr. 790), but the ALJ observed that Plaintiff sat through the hearing (he stood on four occasions during the hearing, and his total sitting time during the hearing was 81 minutes and total standing time was about 22 minutes) (Tr. 21). *See* 20 C.F.R. § 404.1527(c)(4) (stating an ALJ must consider consistency); *Bass v. McMahon*, 499 F.3d 506, 511-12 (6th Cir. 2007) (the ALJ properly rejected a treating physician's "conclusion of disabling back pain," where "controlling weight will not be provided to a treating physician's opinion on an issue reserved to the Commissioner," and where this opinion was inconsistent with the treating physician's own statements on other occasions and with the opinions of other medical evaluators). Thus, the ALJ reasonably assigned only "little weight" to Dr. Fletcher's opinion.

Plaintiff takes issue the ALJ's analysis, arguing that he "constantly trie[d] to interpret the opinion of the doctor by stating that [he] must have meant Plaintiff can sit for longer

than what the doctor stated due to a mathematical computation performed by the ALJ" (Pl.'s Br. at 12). Plaintiff, however, does not show how the ALJ's calculations were incorrect (Pl.'s Br. at 11-12). Plaintiff also argues that the ALJ "trie[d] to state that the Doctor meant that Plaintiff could not bend at the waist, though he Doctor actually state[d] 'bend and twist'" (Pl.'s Br. at 12). On the questionnaire, however, when asked whether Plaintiff could "bend and twist at the waist," Dr. Fletcher responded "[n]ot at all" (Tr. 792) (emphasis added). In any event, as discussed above, these were not the only reasons proffered by the ALJ for discounting Dr. Fletcher's opinion (Tr. 21). Any arguable deficiency, therefore, does not detract from the substantial evidence supporting the ALJ's decision. Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (citations omitted)).

Plaintiff next takes exception to the ALJ's failure to re-contact Dr. Fletcher (Pl.'s Br. at 12-13). Although the agency's regulations do permit an ALJ to re-contact a treating physician, psychologist or other source, *see* 20 C.F.R. § 404.1520b(c)(1), the ALJ was not required to do so in this instance. Here, the evidence was not insufficient for a determination of disability. Nor was the agency unable to reach a conclusion about disability after weighing the evidence.

Plaintiff next contends that the ALJ committed error by failing to reasonably evaluate the opinion of Dr. DesJardins in assessing his residual functional capacity (Pl.'s Br. at 10). As the ALJ found, however, Dr. DesJardins's statement that he was unable to lift greater than five pounds was inconsistent with the record (Tr. 22). Plaintiff demonstrated normal strength on several occasions (Tr. 397, 421, 538). See 20 C.F.R. § 404.1527(c)(4) (stating an ALJ must consider whether an opinion is consistent with the record as a whole); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) ("Any record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or is inconsistent with the record."). As the ALJ also found, Dr. DesJardins's opinion was not consistent with Plaintiff's own hearing testimony that he could lift up to 20 pounds (Tr. 52). *See Wright v. Sullivan*, 1992 WL 75218, at *5 (6th Cir. April 15, 1992) (unpublished) (refusing to credit a physician's assessment of the claimant's condition because it "was supported by no clinical findings and [it was] contradicted by claimant's own statements"). The ALJ, therefore, reasonably assigned only "little weight" to this opinion.

Plaintiff wrongly argues that the ALJ erred by not mentioning his "Fitness for Duty" examination in March 2013 (Pl.'s Br. at 10). There are two problems with Plaintiff's argument. First, the

13

ALJ, in fact, mentioned exhibit 6F (Tr. 22), which contains the "Fitness for Duty" examination (Tr. 644-45). And, second, Dr. Soffer recommended that Plaintiff was not fit for duty "for the position of Customs and Border Protection Officer" (Tr. 645), not that his impairments precluded other work. The ALJ, therefore, reasonably considered Dr. Soffer's examination.

Plaintiff next avers that the ALJ erred because he did not reasonably evaluate the opinion of Dr. Schwerzler in his residual functional capacity assessment (Pl.'s Br. at 10). As the ALJ found, however, Dr. Schwerzler himself found that Plaintiff was logical and had normal speech, full orientation, and ability to perform serial sevens, although he was also distressed and nervous (Tr. 375-76). 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence."). Moreover, as the ALJ noted (Tr. 22), Dr. Schwerzler did not have the benefit of the records in the file dated after February 2014. *See* 20 C.F.R. § 404.1527(c)(4); *Norris*, 461 F. App'x at 439. The ALJ, therefore, reasonably gave only "little weight" to the opinion of Dr. Schwerzler.

Plaintiff next asserts that the ALJ improperly evaluating the opinions of Dr. Sadler in formulating his residual functional capacity (Pl.'s Br. at 10). However, Dr. Sadler's opinion that Plaintiff could only stand for four hours in an eight-hour day, occasionally balance, and had limitations on his ability to handle were generally inconsistent with Plaintiff's often noted normal strength and gait and improved pain with treatment (Tr. 397, 421, 538, 558, 610, 614, 619, 824, 849, 858, 862, 864, 903). Plaintiff himself also denied problems with balance on several occasions (Tr. 685, 764). *See id*. The ALJ, therefore, reasonably gave only "little weight" to Dr. Sadler's opinions regarding standing, balancing, handling, and performing gross manipulations (Tr. 22-23).

Plaintiff argues that the ALJ erred by not reasonably evaluating the disability determination by the Veterans Administration in assessing his residual functional capacity (Pl.'s Br. at 10-11). Plaintiff's argument is unpersuasive. SSR 06-03p states that

> [b]ecause the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. However, the adjudicator should explain the consideration given to

15

>these decisions in the notice of decision for hearing cases. . . .

2006 WL 2329939, at *7. Here, as required, the ALJ considered the determination of the Veterans Administration that Plaintiff had a 100 percent service-connected disability (Tr. 22). As the ALJ found, the Veterans Administration has different requirements for disability than the Commissioner (Tr. 22). *Deloge v. Comm'r of Soc. Sec. Admin.*, 2013 WL 5613751, at *2 (6th Cir. Oct. 15, 2013) (unpublished) ("The VA relies on independent and distinct criteria to assess disability, however, and its determination would not have controlled whether *Deloge* was eligible for Social Security disability benefits.").

As the ALJ also found (Tr.22), the emphasis of these documents was to determine the level of disability Plaintiff had in relation to his prior job as a Customs and Border Protection Officer (Tr. 217-24, 226-29). As the ALJ further found, the medical records often noted normal strength and gait (Tr. 397, 421, 482, 538, 559, 635, 773, 862) and mental stability with treatment (Tr. 417, 461, 470, 473, 476, 478, 480, 493-94, 499-500, 502, 504, 516-17, 523, 528, 533, 550, 556, 577, 595, 694-95, 700, 703, 709, 718, 724, 742, 753, 758, 763, 767, 770, 776, 779, 782, 823, 826, 841, 846, 851, 884-87). An ALJ can discount, even the opinion of an acceptable medical source, where it is inconsistent with the record

as a whole. See 20 C.F.R. § 404.1527(c)(4); *Norris*, 461 F. App'x at 439. Thus, the ALJ reasonably gave only "some" weight to the determination of the Veterans Administration.

Plaintiff argues that the ALJ erred because he did not reasonably consider his subjective complaints in finding that he had the residual functional capacity for light work with limitations as set forth above (Pl.'s Br. at 14). The Court disagrees.

An ALJ must make a finding as to whether a claimant's subjective complaints are consistent with the record as a whole. See 20 C.F.R. § 404.1529(c)(4); SSR 16-3p, 2016 WL 1119029. As the ALJ found, Plaintiff's subjective complaints were not consistent with the objective medical evidence (Tr. 19-20), including the medical evidence discussed above. 20 C.F.R. § 404.1529(c)(4) ("we will evaluate your statements in relation to the objective evidence"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 543 (6th Cir. 2007) ("[T]he record is replete with medical evidence that Cruse's symptoms were not as severe as she suggested."). As the ALJ also found (Tr. 19), evidence that medications or other treatment ameliorated Plaintiff's symptoms detracted from his subjective complaints (Tr. 558, 610, 614, 619, 824, 849, 858, 862, 864, 903), as discussed above. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (stating an ALJ must consider the effectiveness of treatment); *Torres v. Comm'r of Soc. Sec.*, 490

Fed. Appx. 748, 754 (6th Cir. 2012) (unpublished) (the fact that Plaintiff's symptoms "often improved with medication and treatment" undercuts the claimed severity of his impairments).

As the ALJ further found, Plaintiff's activities of daily living undermined his subjective complaints (Tr. 16-17). For example, in March 2014, he reported minimal problems with personal care and said he could prepare meals, clean occasionally, drive a car, shop in stores, pay bills, and count change (Tr. 283-91). See 20 C.F.R. § 404.1529(c)(3)(i) (stating an ALJ must consider a claimant's activities); *Torres*, 490 F. App'x at 754 (allegations of impairments could be considered inconsistent with claimant's own testimony about the daily activities she is able to perform). Because the ALJ gave several valid reasons for discounting Plaintiff's subjective complaints, the Court should not disturb the ALJ's findings, even if it finds fault with one or more of those reasons. *See Sanders*, 556 U.S. at 409.

The ALJ reasonably found that Plaintiff had the residual functional capacity for a range of light work with limitations as set forth above (Tr. 17-23). The ALJ asked the vocational expert to assume a hypothetical individual of Plaintiff's age, education, work experience, and residual functional capacity (Tr. 74-75). The vocational expert testified that such an individual could perform the jobs of cleaner/housekeeper, small products assembler, and inspector (Tr. 77). *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d

235, 239 (6th Cir. 2002) (a vocational expert's answer to a hypothetical question constitutes substantial evidence so long as the question accurately portrays the claimant's physical and mental impairments). The ALJ, therefore, reasonably found that Plaintiff was not disabled. *Blackburn v. Comm'r of Soc. Sec.*, No.18-5123 (6th Cir. September 14, 2018).

Plaintiff argues that the ALJ erred by relying on the vocational expert's testimony because his hypothetical questions did not include limitations assigned by Dr. Schwerzler (Pl.'s Br. at 13-14). The ALJ, however, was not required to include limitations in his hypothetical questions that were neither credible nor supported by the record. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that the ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.") (citation omitted).

## CONCLUSION

Finding no error on the part of the ALJ, the decision is **AFFIRMED.**

Accordingly,

19

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (DE 9) be, and it hereby is, **DENIED** and that Defendant's Motion for Summary Judgment (DE 11) be, and it hereby is, **GRANTED.**

A separate judgment in conformity herewith shall this date be entered.

This the 26th day of September, 2018.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge